United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

HENRY MALASKY,
Plaintiff,

v.

ROBERT A. JULIAN, et al.,
Defendants.

Case No. 16-cv-04102-DMR

**ORDER ON MOTIONS TO DISMISS**

Re: Dkt. Nos. 13, 14

## I. INTRODUCTION

In this case, pro se Plaintiff Henry Malasky sues his ex-wife, Sandra Esposito; his two adult sons, Martin Malasky and Garrett Malasky; and two attorneys, Basil Plastiras and Robert A. Julian, who represented his ex-wife and sons in connection with prior legal disputes with Plaintiff. Although the FAC makes only oblique references to those disputes, Plaintiff appears to seek redress for alleged wrongs by Defendants connected to the prior litigation. This is Plaintiff's second attempt to challenge Defendants' alleged wrongdoing in federal court. Defendants Plastiras and Julian now separately move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff's amended complaint ("FAC"). [Docket Nos. 13 (Plastiras's Mot.), 14 (Julian's Mot.).] The court held a hearing on December 22, 2016. For the following reasons, Defendants' motions are granted and the FAC is dismissed with prejudice.

## II. BACKGROUND

Plaintiff makes the following allegations in the FAC, all of which are taken as true for purposes of this motion.[1] Prior to 2010, Plaintiff was married to Defendant Esposito. The couple

[1] When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted).

had three children, including Defendants Martin and Garrett Malasky (for clarity, the court refers to them as "Martin" and "Garrett"; together, the "sons") and a daughter, Lucia Malasky. Plaintiff and Esposito owned a home in Tiburon, California (the "Tiburon house"). FAC ¶¶ 14-15. Plaintiff alleges that at some point during their marriage, he "and/or" Esposito "became personally obligated for the 'parents' share' of certain student loans used" by the sons for their education, but that they were never obligated to pay the "'students' share'" of the student loans. The "students' share" of the loans was owed solely by Martin and Garrett. *Id*. at ¶¶ 16-18 (emphases in original).

Plaintiff alleges that at some point prior to May 17, 2010, a "disgruntled attorney, Lippenberger," started threatening to sue Plaintiff and Esposito for allegedly unpaid legal services and "claimed he would seize any equity in the Tiburon house and any other assets" of the couple. *Id*. at ¶ 19. On May 17, 2010, Esposito convinced Plaintiff to set aside some of the equity in the Tiburon house "as a funding mechanism to pay the 'parents' share' of the student loans." Based on Esposito's representations, Plaintiff agreed to sign "promissory note(s) and deed(s) of trust" secured by the Tiburon house to the sons' benefit as said "funding mechanism." *Id*. at ¶ 20. Plaintiff now believes that Esposito "concealed her intent to have [P]laintiff pay money to [Martin and/or Garrett] as a 'gift' rather than as a funding mechanism" for the parents' share of the student loans "and/or that [Esposito] coerced [P]laintiff to sign the promissory note(s) and deed(s) of trust based on the threats from Lippenberger and/or uncertainties in their financial futures." *Id*. at ¶ 21. Plaintiff signed the promissory note(s) and deed(s) of trust in favor of Martin and Garrett on May 17, 2010. *Id*. at ¶ 23. Only Plaintiff and Esposito signed the promissory note(s) and deed(s) of trust secured by the Tiburon house, and Plaintiff alleges that Martin and Garrett provided no consideration for the promissory note(s) and deed(s) of trust. *Id*. at ¶¶ 24, 25.

Esposito commenced divorce proceedings against Plaintiff on October 22, 2010 in Marin County Superior Court. The court approved a marital settlement agreement ("MSA") between Plaintiff and Esposito on October 7, 2013. *Id*. at ¶¶ 27, 29. Pursuant to the MSA, Plaintiff received sole title to the Tiburon house and assumed the parents' share of the sons' student loans for which Plaintiff and Esposito were originally obligated. The agreement allowed Plaintiff to "challenge or contest the promissory notes" to Martin and/or Garrett "and/or other obligations

imposed" on Plaintiff. *Id*. at ¶¶ 29-31. The MSA required Plaintiff to "create a method to fund the 'parents' share' of the student loans different than the previously-created promissory note(s) and deed(s) of trust" secured by the Tiburon house, but "did not create any new obligation with respect to the funding mechanism related to the promissory note(s) or deed(s) of trust; did not create any obligation to pay on the 'students' share" of the students [sic] loans; and did not create any new 'debt' owed by [P]laintiff" to Martin and/or Garrett. *Id*. at ¶ 33.

In accordance with the MSA, Plaintiff agreed to a separate funding mechanism with a third party to pay off the parents' share of the student loans and began making payments to the third party. Given this separate funding mechanism, Plaintiff believed the promissory note(s) and deed(s) of trust secured by the Tiburon house were no longer necessary as an alternative funding mechanism. In January 2014, Plaintiff listed the Tiburon house for sale and asked the sons to release the promissory note(s) and deed(s) of trust securing the Tiburon house. *Id*. at ¶¶ 35-38. Plaintiff emailed his request to Martin and Garrett because he did not have their addresses. The sons never responded to Plaintiff's request. *Id*. at ¶ 39.

Plaintiff alleges that he was in communication with Defendant Plastiras prior to the close of escrow on the Tiburon house. In a letter dated February 21, 2014, Plastiras informed Plaintiff that his office "represents the interests of Martin Malasky, Garrett Malasky and Lucia Malasky in connection with the collection of a Deed of Trust and Promissory Note signed by Henry Malasky on May 17, 2010." *Id*. at ¶ 40. Plaintiff alleges that Plastiras "told the escrow officer and/or [P]laintiff that the sons . . . would release the notes and deeds of trust prior to close of escrow and/or the funds from the notes would be deposited in that attorney's trust account until the disputes were resolved." *Id*. at ¶ 40. However, "[j]ust before the close of escrow around April 4, 2014," Martin and Garrett "refused to release the previously-executed promissory note(s) and deed(s) of trust," and instead demanded the escrow funds based on the promissory notes and deeds of trust. *Id*. at ¶ 42. After the close of escrow, Martin and Garrett received $70,005.48 in escrow funds "to which they had no legal claim." Plaintiff alleges the escrow funds unjustly enriched the sons because "no 'debts' existed to obligate [P]laintiff for those funds and/or because [P]laintiff revoked the 'gifts' if any there were [sic]" to the sons prior to the close of escrow. *Id*. at ¶¶ 43, 44.

Based on Plastiras's February 21, 2014 letter and other unspecified communications, Plaintiff alleges that he reasonably believed that Plastiras was representing Martin and Garrett. However, "[m]any months later," Plastiras signed a declaration in state court in which he denied representing the sons and stated that he only represented Esposito. *Id*. at ¶ 41.

Plaintiff alleges that Julian is an attorney who "has been acting as the debt collector for defendants . . .; as the debt collector for his law firm(s) as an alleged creditor(s); <u>and/or</u> as an alleged creditor himself." *Id*. at ¶ 2 (emphasis in original). Plaintiff alleges that "[d]uring the past year," Julian and/or his law firm "[has] been providing legal services to the other defendants in this amended complaint, apparently on a 'pro bono' (i.e. without charge) basis," including Esposito, Martin, and/or Garrett. *Id*.

Plaintiff alleges that Defendants, "acting in concert, have attempted and are still attempting to collect alleged 'debts' from [P]laintiff by improper collection methods." *Id*. at ¶ 47. He alleges that Defendants contend that the promissory notes and deeds of trust "resulted in 'debts' owed to [Martin and/or Garrett]," even though Plaintiff does not owe any debts to any of the defendants. *Id*. at ¶¶ 48, 49. He also alleges that Defendants seek to collect alleged debts "and/or attorney's fees arising from alleged 'debts', in the California <u>state</u> courts by the use of the United States mail," even though he does not owe any debts to any of the defendants. *Id*. at ¶ 7 (emphasis in original).

Plaintiff brings four claims for relief: 1) a Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq. claim for "improper collection efforts"; 2) a claim for "RICO extortion," pursuant to 18 U.S.C. §§ 1961-1968; 3) declaratory judgment regarding the terms of the MSA; and 4) declaratory relief "re: Retaliation." Defendants Plastiras and Julian separately move to dismiss the FAC. Plastiras also moves in the alternative pursuant to Rule 12(e) for a more definite statement.

**III. JUDICIAL NOTICE**

In connection with his opposition to Plastiras's motion, Plaintiff asks the court to take judicial notice of two documents. [Docket No. 24.] The documents purport to be Plastiras's February 21, 2014 letter to Plaintiff (*see* FAC ¶ 40) and a February 28, 2014 email from Plastiras

to Plaintiff regarding proposed escrow instructions. Plaintiff asks the court to take judicial notice of the documents pursuant to Federal Rule of Evidence 201, which permits a court to "judicially notice a fact that is not subject to reasonable dispute because it . . . (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). He did not submit a declaration authenticating the two documents. Plastiras objects to the court taking judicial notice of these documents. [Docket No. 26 (Plastiras's Objections).[2]]

The court denies Plaintiff's request for judicial notice of the documents. They are unauthenticated and Plaintiff fails to identify which specific facts contained therein that he contends are "not subject to reasonable dispute." Further, to the extent the contents of these documents are disputed, "such matters of controversy are not appropriate subjects for judicial notice." *Del Puerto Water Dist. v. U.S. Bureau of Reclamation*, 271 F. Supp. 2d 1224, 1234 (E.D. Cal. 2003).

The court sua sponte takes judicial notice of another proceeding involving similar parties that Plaintiff filed in the United States District Court, Western District of Texas. *See Malasky v. Julian, et al.*, No. 16-cv-00445 SS (W.D. Tex., filed Apr. 27, 2016) (the "Texas Action"); *see* Fed. R. Evid. 201(c)(1) ("[t]he court . . . may take judicial notice on its own"). Federal courts may "take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to the matters at issue." *U.S. ex rel Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992). In the Texas Action, Plaintiff sued Defendants Julian, Esposito, Martin, and Garrett (but not Plastiras) for FDCPA and "RICO Extortion" claims, alleging facts nearly identical to those alleged here. *See Malasky*, No. 16-cv-00445 SS, Docket No. 3 (Am. Compl.). On June 1, 2016, the court dismissed Plaintiff's complaint and amended complaint without prejudice, holding that those pleadings "allege only

[2] Plastiras submitted a separate document entitled, "Objections to Plaintiff's Evidence and Opposition to Plaintiff's Request for Judicial Notice." This document violates Civil Local Rule 7-3(c), which requires evidentiary and procedural objections to an opposition to be contained within the reply brief. However, Plastiras's reply brief was only 7 pages. The court will consider Plastiras's objections, because even if his reply brief had contained the objections, it would have stayed within the page limits.

opinions and conclusions and lack any basis for any factual theory of liability, damages, or any other relief in this case." *See id.*, Docket No. 12 (June 1, 2016 Order). The court also warned Plaintiff about the possibility of Federal Rule of Civil Procedure 11 sanctions should he file "any other complaint in any other lawsuit in this Court," noting that sanctions are available "when there is no basis of fact nor law in judgment and the pleadings are wholly frivolous." *Id.*

The court also sua sponte takes judicial notice of another action brought by Plaintiff in California state court involving allegations related to those in the FAC. In April 2014, Plaintiff filed suit in Marin County Superior Court, alleging causes of action for unjust enrichment, fraud, and breach of contract/declaratory relief against Martin, Garrett, and Plastiras (the "California action"). [Docket No. 14-2 (Julian Decl., Nov. 9, 2016) ¶ 8, Ex. A (*Malasky v. Malasky, et al.*, No. CIV1401290 (Compl.) (filed Apr. 4, 2014)).] In the California action, Plaintiff sought declaratory relief related to his dispute with his sons over the escrow funds received by them in connection with the promissory note and deed of trust. *See id.* Similar to the allegations in the FAC, Plaintiff alleged in the California action that he and Esposito sought to protect equity in the Tiburon house "by creating a promissory note and deed of trust in favor of [Martin and Garrett] knowing that [Martin and Garrett] had not given them anything in consideration for such note and deed of trust." *Id.* at ¶ 9. His unjust enrichment cause of action was based on his allegations that as to the escrow funds, "Plaintiff . . . conferred a benefit upon [Martin and Garrett] to which they are not entitled (e.g. because of the lack of consideration for the May 2010 promissory note and deed of trust)" and that Martin and Garrett "have no right to the disputed funds." *Id.* at ¶¶ 23, 24.

On September 5, 2014, the court sustained the sons' demurrer to the complaint without leave to amend as to all of Plaintiff's causes of action. Julian Decl., ¶ 10, Ex. B. In relevant part, the court sustained the demurrer to the unjust enrichment cause of action "on grounds it is based on allegations inconsistent with the express recital in the promissory note that states it was given 'For valuable consideration.'" As to the fraud cause of action, the court held that Plaintiff failed to allege "reasonable reliance and damages," noting that "there appears to have been no true 'dispute' concerning the sons' entitlement to the $60,000 plus interest" in escrow funds. *Id.* On October 28, 2014, the court granted the sons' motion for an award of attorneys' fees as the

prevailing party and awarded them $50,541.50. Julian Decl. ¶ 12, Ex. C. The California Court of Appeal affirmed the lower court's ruling on the demurrer and award of attorneys' fees on April 28, 2016. *Id.* at ¶ 14, Ex. F. The California Supreme Court denied review on July 13, 2016 and Plaintiff filed a petition for writ of certiorari with the United States Supreme Court in October 2016, which apparently remains pending. *Id.* at ¶¶ 15, 16, Exs. I, J.

## IV. LEGAL STANDARDS

### A. Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc*., 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001), overruled on other grounds by *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

As a general rule, a court may not consider "any material beyond the pleadings" when ruling on a Rule 12(b)(6) motion. *Lee*, 250 F.3d at 688 (citation and quotation marks omitted). However, "a court may take judicial notice of 'matters of public record,'" *id.* at 689 (citing *Mack v. S. Bay Beer Distrib*., 798 F.2d 1279, 1282 (9th Cir. 1986)), and may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which

are not physically attached to the pleading," without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), overruled on other grounds by *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). The court need not accept as true allegations that contradict facts which may be judicially noticed. *See Mullis v. U.S. Bankr. Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987).

### B. Motion for More Definite Statement

Federal Rule of Civil Procedure 12(e) provides that "a party may move for a more definite statement of a pleading . . . which is so vague or ambiguous that the party cannot reasonably prepare a response." Motions for a more definite statement are "viewed with disfavor" and rarely granted. *Cellars v. Pacific Coast Packaging, Inc.*, 189 F.R.D. 575, 578 (N.D. Cal. 1999). However, courts may require a more definite statement "when the pleading is so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith or without prejudice to himself." *Id.* (quotation and citation omitted).

## V. DISCUSSION

### A. Plastiras's Motion[3]

#### i. FDCPA Claim

Plaintiff's first claim for relief is for violation of the FDCPA. The FDCPA prohibits a "debt collector" from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt" or "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C §§ 1692e, 1692f. It also prohibits debt collectors from engaging in "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of any debt." 15 U.S.C. § 1692d. Plaintiff alleges that he does not owe any debt to any defendant related to any portion of the sons' student loans or to the promissory notes and deeds of trust. FAC ¶ 57. He alleges that that Defendants' actions "were not justifiable efforts to collect the 'debts' allegedly owed by [P]laintiff," and that Defendants'

[3] Plaintiff argues that Plastiras's motion does not refer to the "amended complaint" and is therefore moot. Opp'n at 9. To the contrary, the motion seeks a dismissal of Plaintiff's "Amended Complaint with prejudice." Plastiras's Mot. at 1.

United States District Court
Northern District of California

acts were "oppressive, threatening, and calculated to coerce and/or force [P]laintiff's payment of the alleged (and disputed) 'debts.'" FAC ¶ 59. The FAC does not identify a specific provision of the FDCPA that Plaintiff alleges Plastiras (or any other defendant) violated.

At the hearing, Plaintiff was unable to identify the specific debt that Plastiras allegedly attempted to collect and conceded that he has not stated a claim under the FDCPA against Plastiras. Following the hearing, Plaintiff filed a document titled, "Supplemental Argument re: Motions to Dismiss," in which he asserts that the debt at issue "includes the 2010 promissory notes signed by plaintiff and his exwife Sandy Esposito in favor of the two adult sons, Martin and Garrett Malasky." [Docket No. 29 (Pl.'s Suppl. Brief).] This document, which was filed without leave of court, is improper. Plaintiff filed briefs in opposition to the motions to dismiss and had the opportunity to properly raise the arguments addressed in his supplemental brief. Nonetheless, in light of Plaintiff's pro se status, the court will consider the arguments raised therein.

As to Plaintiff's belated attempt to identify the debt at issue, it is not clear whether Plaintiff is attempting to revive his FDCPA claim against Plastiras, which he has already conceded at the hearing. To the extent that he is, the attempt fails. Plaintiff's FDCPA claim against Plastiras must be dismissed as inadequately pleaded for several reasons. First, the FAC fails to specify any collection efforts Plastiras undertook and how any such efforts violate any provision of the FDCPA. The factual allegations in the FAC about Plastiras are as follows: Plastiras sent a February 2014 letter to Plaintiff in which he stated that his office represented the interests of the Malasky children with respect to the collection of the May 17, 2010 deed of trust and promissory note; Plastiras told the escrow officer and/or Plaintiff that the sons "would release the notes and deeds of trust prior to close of escrow"; and months after these events, Plastiras denied in a state court filing that he represented the sons. FAC ¶¶ 40, 41. Notwithstanding Plaintiff's assertion that each of the defendants "have been, and are still seeking, to collect alleged 'debts' from [P]laintiff," (FAC ¶ 7), it is not clear how any of the allegations specific to Plastiras relate to an attempt to collect any debt.

Next, Plaintiff contends that the escrow funds that the sons received as a result of the promissory note(s) and deed(s) of trust are the "debt" that Plastiras allegedly attempted to collect.

"As a threshold matter, a suit brought under the FDCPA must involve a 'debt within the meaning of the statute." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009) (citing *Turner v. Cook*, 362 F.3d 1219, 1227 (9th Cir. 2004)). The FDCPA defines "debt" as

> any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

15 U.S.C. § 1692a(5). The statute "is limited in its reach 'to those obligations to pay arising from consensual transactions, where parties negotiate or contract for consumer-related goods or services.'" *Turner*, 362 F.3d at 1227 (quoting *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1326 (7th Cir. 1997), as the articulation of the "consensus judicial interpretation"). The escrow funds that are allegedly in his sons' possession and which Plaintiff seeks to recover by this lawsuit are not a consumer debt that Plaintiff himself owes. Rather, Plaintiff alleges that the escrow funds are rightfully his and should be returned to him. These funds do not satisfy the standard set forth in either the statute or *Turner*.

The FAC also fails to allege that Plastiras is a "debt collector" within the meaning of the FDCPA. To the extent that Plaintiff asserts claims under sections 1692e and/or 1692f, these provisions apply only to "debt collector[s]" as defined by the FDCPA. *Schlegel v. Wells Fargo Bank, NA*, 720 F.3d 1204, 1208 (9th Cir. 2013). The term "debt collector" means: (1) "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts," and (2) any person "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The FAC does not plead "factual content that allows the court to draw the reasonable inference" that Plastiras is a debt collector within the meaning of the statute. *See Iqbal*, 556 U.S. at 678.

Finally, it appears that any FDCPA claim against Plastiras is time-barred. As discussed above, the only facts in the FAC specific to Plastiras occurred in 2014—Plastiras's February 21, 2014 letter to Plaintiff and pre-April 2014 communications about escrow. "An action to enforce any liability created by [the FDCPA] may be brought . . . within one year from the date on which

the violation occurs." 15 U.S.C. § 1692k. Plaintiff did not file the present action until July 21, 2016, over two years after the complained-of communications by Plastiras.

For these reasons, Plaintiff's FDCPA claim against Plastiras is dismissed.

**ii. RICO Claim**

Plaintiff's second claim for relief is titled, "RICO Extortion." He alleges that "Defendants . . . have acted in concert and/or alone as part of the 'enterprise' noted herein; and have engaged in at least two (2) acts prohibited by 18 U.S.C. Secs. 1961-1968 ('RICO') during the last 10 years." FAC ¶ 63. He alleges that the goals of the "enterprise" included Martin and Garrett's receipt of the escrow funds; the prevention of "any state court trial from occurring so that [P]laintiff could not recover the funds received or seized" by the sons; to punish Plaintiff by making him liable for attorney's fees payable to Attorney [Julian]; to retaliate against Plaintiff for his acts towards his children and/or Esposito during their marriage; and/or to extort funds from Plaintiff. *Id*. at ¶ 64.

The FAC does not identify the RICO subsection that Plaintiff alleges Defendants violated, but it appears that Plaintiff seeks to proceed under 18 U.S.C. § 1962(c), the "RICO statute." Section 1962(c) provides that it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c).[4] The elements of a

[4] 18 U.S.C. § 1962(a) provides that it is unlawful

> for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

Section 1962(b) provides that it is unlawful

> for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

civil RICO claim are "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's 'business or property." *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005) (citation omitted).

As with Plaintiff's FDCPA claim, his RICO claim must be dismissed as inadequately pleaded. "A pattern of racketeering activity . . . requires at least two predicate acts, which include 'any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in [narcotics],' that is an offense under state law 'and punishable by imprisonment for more than one year,'" *United States v. Fernandez,* 388 F.3d 1199, 1221 (9th Cir. 2004), *modified,* 425 F.3d 1248 (9th Cir. 2005), as well as any act indictable under certain enumerated federal criminal statutes. 18 U.S.C. § 1961(1). It appears that Plaintiff alleges that Defendants have engaged in the predicate act of "extortion," (*see* FAC ¶ 64), but the FAC is devoid of any facts supporting such an allegation, and it does not identify any other predicate act or acts that form the basis of Plaintiff's RICO claim. At the hearing, the only predicate act Plaintiff was able to identify was Plastiras's alleged "lie" to Plaintiff about whether Plastiras represented Martin and Garrett. He was unable to identify any predicate offense that satisfies the RICO statute. In his supplemental brief, Plaintiff asserts that the

> "crimes" of Basil Plastiras include fraudulent inducement of plaintiff by way of the Feb. 2014 letter, the 2014 escrow instructions, and emails . . . to prevent plaintiff from taking steps to protect himself by impounding the disputed funds of about $70,000 before the close of escrow (so the theft could occur); and aiding . . . the theft of $70,000 by the adult sons both before *and* after April 2014.

Pl.'s Suppl. Brief at 2. He also lists a number of California Penal Code provisions, asserting that Plastiras is "both a principal and accessory" to the alleged theft of the escrow funds. *See id.* Plaintiff's RICO claim remains deficient. The FAC does not allege that any of the defendants

---

Neither section appears applicable here.

committed one of the state law crimes defined as racketeering activity in section 1961(1)(A), and Plaintiff's supplemental brief does not remedy this shortcoming. Neither common law fraud nor simple theft is a crime constituting a predicate act for purposes of establishing a pattern of racketeering activity. *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 653 (2008) ("Congress chose to make mail fraud, not common-law fraud, the predicate act for a RICO violation."); *United States v. Napoli*, 54 F.3d 63, 68 (2d Cir. 1995), *abrogated on other grounds as stated in United States v. Genao*, 343 F.3d 578, 584 (2d Cir. 2003) ("the crime of theft, standing alone, . . . is neither a federal crime listed in [18 U.S.C. §§ ] 1956 and 1961, nor one of the state-law offenses that constitute RICO predicate acts"). *See also Annulli v. Panikkar*, 200 F.3d 189, 200 (3d Cir. 1999), *abrogated on other grounds in Forbes v. Eagleson*, 228 F.3d 471 (3d Cir. 2000) ("if garden-variety state law crimes, torts, and contract breaches were to constitute predicate acts of racketeering (along with mail and wire fraud), civil RICO law, which is already a behemoth, would swallow state civil and criminal law whole."). Therefore, the FAC fails to allege that Plastiras (or any other defendant) has engaged in a "pattern" of racketeering activity. *See Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 481 (1985) (holding that the statutory language that a pattern "requires" rather than "means" two acts implies that "while two acts are necessary, they may not be sufficient" and noting that the legislative history "supports the view that two isolated acts of racketeering activity do not constitute a pattern.").

The FAC also does not adequately allege an enterprise. The RICO statute defines "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). "[A]n associated-in-fact enterprise is 'a group of persons associated together for a common purpose of engaging in a course of conduct.'" *Odom v. Microsoft Corp.*, 486 F.3d 541, 552 (9th Cir. 2007) (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)). In addition to showing a common purpose, Plaintiff must show that there is "an ongoing organization, formal or informal," and "that the various associates function as a continuing unit." *Id.*; *see Boyle v. United States*, 556 U.S. 938, 946 (2009) ("From the terms of RICO, it is apparent that an association-in-fact enterprise must have at least three structural features: a purpose, relationships among those

associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."). The FAC does not sufficiently allege facts supporting the assertion that Defendants formed an enterprise or function as a continuing unit. As to Plastiras specifically, the FAC does not allege that he "conducted or participated in the conduct of the '*enterprise's* affairs,'" as opposed to his own affairs. *See Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) (emphasis in original).

For these reasons, Plaintiff's RICO claim must be dismissed.

**iii. Claims for Declaratory Relief**

Finally, Plastiras moves to dismiss Plaintiff's third and fourth claims for declaratory judgment and declaratory relief. The Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, provides in pertinent part:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a). "A declaratory judgment is not a theory of recovery . . . [§ 2201] "merely offers an *additional remedy* to litigants." *Flores v. EMC Mortg. Co.*, 997 F. Supp. 2d 1088, 1111 (E.D. Cal. 2014) (citations and quotation marks omitted). Declaratory relief is appropriate "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Bilbrey by Bilbrey v. Brown*, 738 F.2d 1462, 1470 (9th Cir. 1984).

Plaintiff's third claim states that there is an actual controversy "regarding [P]laintiff's rights under the MSA and in regards to the alleged debts." FAC ¶ 66. With respect to his fourth claim, Plaintiff alleges he seeks a "declaratory judgment as to the rights, duties and obligations of [P]laintiff and the defendants." *Id.* at ¶ 70. These claims must be dismissed because the FAC does not allege any facts suggesting the existence of an "actual controversy" between Plaintiff and Plastiras. Further, at the hearing, Plaintiff confirmed that by these claims, Plaintiff seeks the relief sought in his FDCPA and RICO claims, rendering the declaratory relief claims duplicative and

unnecessary. *See Mangindin v. Wash. Mut. Bank*, 637 F. Supp. 2d 700, 707-08 (N.D. Cal. 2009). The third and fourth claims for relief are therefore dismissed.[5]

**B. Julian's Motion[6][7]**

**i. Res Judicata**

Julian first argues that the FAC should be dismissed based on the doctrine of res judicata. He argues that the claims asserted here have already been adjudicated in the Texas action and are therefore barred.

Res judicata bars litigation in an action if any of the claims were raised or could have been raised in a previous action. *Owens v. Kaiser Found. Health Plan, Inc*., 244 F.3d 708, 713 (9th Cir. 2001). A plaintiff "cannot avoid the bar of res judicata merely by alleging conduct by the defendant not alleged in his prior action or by pleading a new legal theory." *McClain v. Apodaca*, 793 F.2d 1031, 1034 (9th Cir. 1986); *see also Simmons v. Am. Airlines*, No. C-01-1074-JCS, 2002 WL 102604, at *4 (N.D. Cal. Jan. 23, 2002) (following adjudication of discrimination claim, res judicata barred plaintiff from introducing slander claim arising from the same incident). Underlying the res judicata doctrine is the recognition that a plaintiff's interests in a full and fair opportunity to be heard must be considered against the respect for a defendant's efforts and expense in defending itself. *Marin v. HEW, Health Care Fin. Agency*, 769 F.2d 590, 594 (9th Cir. 1985). In addition to private interests, res judicata also serves important public interests, including "avoiding inconsistent results and preserving judicial economy." *Clements v. Airport Auth.of*

[5] Plastiras also argues that he cannot be held liable for Plaintiff's claims because his actions were privileged under California Civil Code § 47(b), which codifies the California litigation privilege. However, it is "well-settled that the California litigation privilege does not apply to federal causes of action, including FDCPA claims." *Oei v. N. Star Capital Acquisitions, LLC*, 486 F. Supp. 2d 1089, 1098 (C.D. Cal. 2006) (collecting cases). Therefore, Plastiras's motion to dismiss is denied on this ground.

[6] Plaintiff argues that Julian's motion should be denied as moot since the FAC was filed on November 8, 2016, and Julian's motion was filed on November 9, 2016, before Julian was served with the FAC. Opp'n at 10. Plaintiff's argument is without merit, since Julian's motion is expressly directed at the FAC.

[7] In connection with his motion, Julian submitted a declaration with 18 exhibits. [Docket No. 14-1 through 14-3.] The court declines to convert this motion to a Rule 56 motion for summary judgment and thus will not consider these materials except as explained above in the section "Judicial Notice."

*Washoe Cty.*, 69 F.3d 321, 330 (9th Cir.1995).

The doctrine of res judicata is applicable when three requirements between the two actions are present: (1) identity of claims, (2) a final judgment on the merits in the first action, and (3) identity or privity between parties. *United States v. Liquidators of European Fed. Credit Bank*, 630 F.3d 1139, 1150 (9th Cir. 2011) (quoting *Tahoe–Sierra Pres. Council v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1077 (9th Cir. 2003)). Here, the Texas action was dismissed *without* prejudice. The Ninth Circuit has "repeatedly held that 'a dismissal without prejudice is not a decision on the merits' for the purposes of res judicata." *Oscar v. Alaska Dep't of Education & Early Dev.*, 541 F.3d 978, 981 (9th Cir. 2008); *see also Weinberg v. Whatcom Cty.*, 241 F.3d 746, 750 (9th Cir. 2001) ("a dismissal without prejudice is not a decision on the merits and thus lacks preclusive effect."). Therefore, there was no final judgment on the merits. Julian argues that this rule "should be contextualized" since the dismissal order "uses such strong language so as to dissuade any further pleadings" and warned the Plaintiff about Rule 11 sanctions. Julian's Mot. at 7. However, he offers no authority for his apparent proposition that the *character* of a dismissal without prejudice may affect its preclusive effect. Accordingly, Julian's motion to dismiss the FAC on the ground of res judicata is denied.

**ii. FDCPA Claim**

Julian moves to dismiss Plaintiff's FDCPA claim. The allegations about Julian in the FAC are sparse. Plaintiff alleges that Julian is an attorney who "has been acting as the debt collector for defendants . . .; as the debt collector for his law firm(s) as an alleged creditor(s); <u>and/or</u> as an alleged creditor himself." FAC ¶ 2 (emphasis in original). He also alleges that "[d]uring the past year," Julian and/or his law firm "[has] been providing legal services to the other defendants in this amended complaint, apparently on a 'pro bono' (i.e. without charge) basis," including Esposito, Martin, and/or Garrett. *Id.* As with Plaintiff's FDCPA claim against Plastiras, the FAC does not identify a specific provision of the FDCPA that Plaintiff alleges Julian violated.

Julian first argues that Plaintiff has not identified a debt within the meaning of the FDCPA. At the hearing, Plaintiff was unable to identify any specific debt that Julian allegedly attempted to collect in violation of the FDCPA, but contends in his supplemental brief that the escrow funds

that Martin and Garrett received are the "debt" that Plastiras allegedly attempted to collect. As discussed above, the escrow funds do not constitute a "debt" within the meaning of the FDCPA. Reading the FAC broadly in light of Plaintiff's pro se status, it is possible Plaintiff also contends that unspecified "attorney's fees" and/or "defense costs by defendants" constitute the debt. *See* FAC ¶¶ 7, 58. These allegations are unclear, but potentially refer to the October 28, 2014 award of attorneys' fees to Martin and Garrett in the California Action. *See* Julian Decl. ¶ 12, Ex. C. The FAC is silent as to any attempt by Julian to collect this award from Plaintiff. Moreover, at least one court has held that such an obligation is not a debt within the meaning of the FDCPA. *See Beal v. Himmel & Bernstein, LLP*, 615 F. Supp. 2d 214, 217 (S.D.N.Y. 2009) (holding that court-ordered obligation to pay attorneys' fees "is not a consumer debt within the meaning of the FDCPA because it did not arise out of any consumer transaction in which he engaged.").

Further, the FAC does not adequately allege that Julian is a "debt collector" within the meaning of the statute. As noted, the term "debt collector" means: (1) "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts," and (2) any person "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The FAC alleges that Julian "is a 'debt collector' and/or an alleged 'creditor' within the meaning of the FDCPA," (FAC ¶ 2), but this allegation is entirely conclusory and unsupported. Moreover, the FAC is silent about collection efforts specific to Julian, and does not specify any specific provision of the FDCPA it alleges he violated. Accordingly, Plaintiff's FDCPA claim as to Julian must be dismissed.

**iii. RICO Claim**

Julian next moves to dismiss Plaintiff's RICO claim. For the same reasons discussed above, Plaintiff's RICO claim as to Julian must be dismissed as inadequately pleaded. As to the RICO predicate acts committed by Julian, Plaintiff identified at the hearing Julian's alleged "lies" about the promissory note(s), including his statement to three judges that the promissory note(s) were a "gift" to the sons. In his supplemental brief, Plaintiff asserts that Julian's "crimes" include the "concealment and aiding of a cover-up of the April 2014 theft of $70,000 by the adult sons . . .

United States District Court
Northern District of California

on at least 3 different occasions before 3 different courts (i.e. Marin County Superior Court; Calif. Court of Appeal; and US District Court in Texas)." Suppl. Br. at 2. As discussed in connection with Plaintiff's RICO claim against Plastiras, these acts do not constitute predicate acts for purposes of establishing a pattern of racketeering activity.

Moreover, there are no facts alleged with respect to this claim that are specific to Julian. The claim is dismissed since Plaintiff fails to identify the RICO subsection that he alleges was violated; fails to identify sufficient predicate acts; fails to allege a pattern of racketeering activity; and fails to allege an enterprise.

**iv. Claims for Declaratory Relief**

Finally, Julian moves to dismiss Plaintiff's third and fourth claims for declaratory relief. The facts alleged in the FAC do not suggest that an "actual controversy" exists between Plaintiff and Julian. Further, as discussed above, these claims are duplicative and unnecessary, as Plaintiff conceded at the hearing that he seeks the same relief sought in his FDCPA and RICO claims. The third and fourth claims for relief are therefore dismissed.

**C. Leave to Amend**

Under Rule 15(a), a court should grant leave to amend "when justice so requires," because "the purpose of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc). A court may deny leave to amend for several reasons, including "undue delay, bad faith, . . . [and] futility of amendment." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

As discussed above, the court questioned Plaintiff at the hearing about the bases for his FDCPA and RICO claims; specifically, the "debt" at issue in the FDCPA claims and the predicate acts required to establish a pattern of racketeering activity for purposes of the RICO claims. Plaintiff was unable to identify any facts to support these claims and his supplemental brief does not identify any new facts that would remedy the deficiencies in the claims. In dismissing the Texas action without prejudice, the court warned Plaintiff about the ramifications of filing any further complaint "when there is no basis of fact nor law in judgment and the pleadings are wholly frivolous." June 1, 2016 Order. The FAC represents Plaintiff's second attempt to plead his

United States District Court
Northern District of California

FDCPA and RICO claims. Since it neither remedies the shortcomings of the complaint in the Texas action nor identifies any new facts that would support his claims, the court finds that further leave to amend would be futile. Plaintiff's claims against Plastiras and Julian are therefore dismissed with prejudice.

**D. Defendants Esposito, Martin Malasky, and Garrett Malasky**

This matter was filed on July 21, 2016. On October 19, 2016, the court issued an Order to Show Cause, directing Plaintiff to show cause why this action should not be dismissed without prejudice for failure to serve the summons and complaint on Defendants within the 90-day deadline imposed by Federal Rule of Civil Procedure 4(m), among other things. [Docket No. 7.] On November 14, 2016, the court granted Plaintiff's request for a 30-day extension to serve the FAC on all defendants, plus an additional three days due to service of the order by mail, with the deadline running from November 14, 2016. [Docket No. 18.] The new deadline for service of the FAC was thus December 19, 2016. *See* Fed. R. Civ. P. 6(a)(1)(C) (if the last day of a time period specified in a court order falls on a Saturday, the period runs until the end of the next day that is not a Saturday, Sunday, or legal holiday). Plaintiff has failed to serve Defendants Esposito, Martin Malasky, and Garrett Malasky by that deadline. Accordingly, the FAC is dismissed without prejudice as to those three defendants pursuant to Rule 4(m).

## VI. CONCLUSION

For the foregoing reasons, Defendants' Plastiras and Julian's motions to dismiss are granted in part. Plaintiff's FAC is dismissed with prejudice as to Defendants Plastiras and Julian. The FAC is dismissed without prejudice as to Defendants Esposito, Martin Malasky, and Garrett Malasky.

**IT IS SO ORDERED.**

Dated: December 29, 2016

DONNA M. RYU
United States Magistrate Judge

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

HENRY MALASKY,

Plaintiff,

v.

ROBERT A. JULIAN, et al.,

Defendants.

Case No. 4:16-cv-04102-DMR

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on December 29, 2016, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Henry Malasky
2110 West Slaughter Lane
Suite 107-580
Austin, TX 78748

Dated: December 29, 2016

Susan Y. Soong
Clerk, United States District Court

By:________________________
Ivy Lerma Garcia, Deputy Clerk to the
Honorable DONNA M. RYU