1

2

3

4                        UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    HENRY MALASKY,                          Case No. 16-cv-04102-DMR

8                    Plaintiff,
                                             **ORDER ON MOTIONS TO DISMISS**
9           v.
                                             Re: Dkt. Nos. 62, 63, 64, 66
10   SANDRA ESPOSITO, et al.,

11                   Defendants.

12          Pro se Plaintiff Henry Malasky sues his ex-wife, Sandra Esposito; his two adult sons,

13   Martin Malasky and Garrett Malasky; and two attorneys, Basil Plastiras and Robert A. Julian, who

14   represented his ex-wife and sons in connection with prior legal disputes.  Plaintiff claims that

15   Defendants engaged in "theft" of over $70,000 in escrow funds.  The court previously dismissed

16   Plaintiff's amended complaint with prejudice as to Plastiras and Julian.  The court dismissed the

17   amended complaint without prejudice as to Esposito, Martin Malasky, and Garrett Malasky, and

18   granted Plaintiff leave to file a second amended complaint against Esposito, Martin Malasky, and

19   Garrett Malasky.  [Docket No. 59.]  Plaintiff filed a second amended complaint ("SAC") on

20   October 11, 2018, again naming Esposito, Martin Malasky, Garrett Malasky, Plastiras, and Julian

21   as Defendants.  [Docket No. 61.]

22          Defendants now separately move to dismiss the SAC.  [Docket Nos. 62 (Plastiras's Mot.),

23   63 (Julian's Mot.), 64 (Martin Malasky and Garrett Malasky's Mot.), 66 (Esposito's Mot).]  These

24   motions are suitable for resolution without oral argument pursuant to Civil Local Rule 7-1(b).  For

25   the following reasons, the SAC is dismissed with prejudice as to all Defendants.

26   I.     BACKGROUND

27          A.      Allegations in the SAC

28          Plaintiff makes the following allegations in the SAC, all of which are taken as true for

United States District Court
Northern District of California

purposes of this motion. *See Erickson v. Pardus*, 552 U.S. 89, 94 (2007) (per curiam). Prior to 2010, Plaintiff was married to Esposito. The couple had three children, including Martin and Garrett Malasky (for clarity, the court refers to them as "Martin" and "Garrett"; together, the "sons") and a daughter, Lucia Malasky. Plaintiff and Esposito owned a home in Tiburon, California (the "Tiburon house"). FAC ¶¶ 25-26. Plaintiff alleges that at some point during their marriage he "and/or" Esposito "became personally obligated for the '<u>parents</u>' share' of certain student loans used" by the sons for their education, but that they were never obligated to pay the "'<u>students</u>' share'" of the student loans. The "<u>students</u>' share" of the loans was owed solely by Martin and Garrett. *Id*. at ¶¶ 27-29 (emphases in original).

Plaintiff alleges that at some point prior to May 17, 2010, a "disgruntled attorney, Lippenberger," started threatening to sue Plaintiff and Esposito for allegedly unpaid legal services and "claimed he would seize any equity in the Tiburon house and any other assets" of the couple. *Id*. at ¶ 30. Additionally, the IRS "started pressuring" Plaintiff and Esposito "as to past due federal taxes on a jointly-owned business and/or on other federal taxes" they owed. *Id*. at ¶ 31. Plaintiff believed that Lippenberger and the IRS could seize any equity in the Tiburon house and any of the couple's other assets. *Id*. at ¶¶ 30, 31.

On May 17, 2010, Esposito convinced Plaintiff to set aside some of the equity in the Tiburon house "as a funding mechanism to pay the 'parents' share' of the student loans." Based on Esposito's representations, Plaintiff agreed to sign "promissory note(s) and deed(s) of trust" secured by the Tiburon house to the sons' benefit as said "funding mechanism." *Id*. at ¶ 32. Plaintiff now believes that Esposito "concealed her intent to have [P]laintiff pay money to [Martin and/or Garrett] as a 'gift' rather than as a funding mechanism" for the parents' share of the student loans "and/or that [Esposito] coerced [P]laintiff to sign the promissory note(s) and deed(s) of trust based on the threats from Lippenberger and/or uncertainties in their financial futures (e.g. due to debts owed to the IRS) and/or health." *Id*. at ¶ 33. Plaintiff signed the promissory note(s) and deed(s) of trust in favor of Martin and Garrett on May 17, 2010. *Id*. at ¶ 35. Only Plaintiff and Esposito signed the promissory note(s) and deed(s) of trust secured by the Tiburon house, and Plaintiff alleges that Martin and Garrett provided no consideration for the promissory note(s) and

2

deed(s) of trust. *Id*. at ¶¶ 36, 37.

Esposito commenced divorce proceedings against Plaintiff on October 22, 2010 in Marin County Superior Court. The court approved a marital settlement agreement ("MSA") between Plaintiff and Esposito on October 7, 2013. *Id*. at ¶¶ 39, 41. Pursuant to the MSA, Plaintiff received sole title to the Tiburon house and assumed the parents' share of the sons' student loans for which Plaintiff and Esposito were originally obligated. The agreement allowed Plaintiff to "challenge or contest the promissory notes" to Martin and/or Garrett "and/or other obligations imposed" on Plaintiff. *Id*. at ¶¶ 41-43. The MSA required Plaintiff to "create a new method to fund the 'parents' share' of the student loans different than the previously-created promissory note(s) and deed(s) of trust" secured by the Tiburon house, but "did not create any new obligation with respect to the funding mechanism related to the 2010 promissory note(s) or deed(s) of trust; did not create any obligation to pay on the 'students' share' of the students [sic] loans; and did not create any new 'debt' owed by [P]laintiff" to Martin and/or Garrett. *Id*. at ¶¶ 44-45.

In accordance with the MSA, Plaintiff agreed to a separate funding mechanism with a third party to pay off the parents' share of the student loans and began making payments to the third party. *Id*. at ¶ 47. Given this separate funding mechanism, Plaintiff believed that the promissory note(s) and deed(s) of trust secured by the Tiburon house were no longer necessary as an alternative funding mechanism. In January 2014, Plaintiff listed the Tiburon house for sale and asked the sons to release the promissory note(s) and deed(s) of trust securing the Tiburon house. *Id*. at ¶¶ 48-50. Plaintiff emailed his request to Martin and Garrett because he did not have their addresses. The sons never responded to Plaintiff's request. *Id*. at ¶ 51.

Plaintiff alleges that he was in communication with Plastiras prior to the close of escrow on the Tiburon house. In a letter dated February 21, 2014, Plastiras informed Plaintiff that his office "represents the interests of Martin Malasky, Garrett Malasky and Lucia Malasky in connection with the collection of a Deed of Trust and Promissory Note signed by Henry Malasky on May 17, 2010." *Id*. at ¶ 52. Following this correspondence, Plaintiff alleges that he stopped trying to communicate with the sons and "instead conducted all negotiations about the pending 2014 escrow and the 2010 promissory notes and deeds of trust with" Plastiras. *Id*.

United States District Court
Northern District of California

Plaintiff alleges that Plastiras "told the escrow officer and [P]laintiff that the sons . . . would release the notes and deeds of trust prior to close of escrow and/or the funds from the notes would be deposited in that attorney's trust account until the disputes were resolved[.]" *Id.* at ¶ 53. However, "[j]ust before the close of escrow around April 4, 2014," Martin and Garrett "refused to release the previously-executed promissory note(s) and deed(s) of trust," and instead demanded the escrow funds based on the promissory notes and deeds of trust, "contrary to representations by" Plastiras. *Id.* at ¶ 55. After the close of escrow, Martin and Garrett received $70,005.48 in escrow funds "to which they had no legal claim," an amount that has increased due to interest "and/or other expenses incurred by [P]laintiff." *Id.* at ¶ 56. Plaintiff alleges that the escrow funds unjustly enriched the sons because "no 'debts' existed to obligate [P]laintiff for those funds and/or because [P]laintiff revoked the 'gifts' if any there were [sic]" to the sons prior to the close of escrow. *Id.* at ¶ 57.

Based on Plastiras's February 21, 2014 letter and other communications from Plastiras, Plaintiff alleges that he reasonably believed that Plastiras was representing Martin and Garrett as their attorney or agent. However, "[m]any months later," Plastiras signed a declaration in state court in which he denied representing the sons and stated that he only represented Esposito. *Id.* at ¶ 54.

Plaintiff alleges that Julian is an attorney who "has been acting as the debt collector for defendants . . .; as the debt collector for his law firm(s) as an alleged creditor(s); and/or as an alleged creditor himself." *Id.* at ¶ 2 (emphasis in original). Plaintiff alleges that Julian and/or his law firm "have been providing legal services to the other defendants in this amended complaint, apparently on a 'pro bono' (i.e. without charge) basis," including Esposito, Martin, and/or Garrett. *Id.* Plaintiff alleges that Esposito, Martin, and Garrett appear to be "alleged 'creditor[s]' within the meaning of the [Fair Debt Collection Practices Act] due to the intentional acts from Feb. 2014 onward" by Esposito, Martin, and Garrett and/or Plastiras. *Id.* at ¶¶ 3-5. He alleges that Defendants, "acting in concert, have attempted and are still attempting to collect and keep alleged 'debts' from [P]laintiff by improper collection methods, and/or to engage in fraud, extortion, theft and/or robbery to obtain and keep [P]laintiff's escrow funds for their own purposes (e.g. without

paying the parents' share of the student loans)." *Id*. at ¶ 60.  Plaintiff denies owing anything to "any defendant at all relevant times." *Id*. at ¶ 1; *see also* ¶ 8.

Plaintiff brings five claims for relief: 1) a Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq. claim for "improper collection efforts"; 2) a claim for violation of the RICO statute, 18 U.S.C. §§ 1961-1968; 3) fraud; 4) declaratory judgment pursuant to California Code of Civil Procedure section 1060; and 5) retaliation.

### B.    Procedural History

Plaintiff initiated the present action on July 21, 2016, and filed an amended complaint ("FAC") on November 8, 2016.  [Docket No. 12.]  Defendants Plastiras and Julian separately moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the FAC.  On December 29, 2016, following a hearing, the court granted the motions in part and dismissed the FAC with prejudice.  The court also dismissed the FAC without prejudice as to Defendants Esposito, Martin Malasky, and Garrett Malasky for Plaintiff's failure to serve them with the summons and complaint within the 90-day deadline imposed by Federal Rule of Civil Procedure 4(m).  [Docket No. 31.]

On March 23, 2018, the United States Court of Appeals for the Ninth Circuit vacated the court's dismissal of the FAC on the ground that not all parties had consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), since not all parties had been served.  *See Williams v. King*, 875 F.3d 500, 504 (9th Cir. 2017) (magistrate judge "jurisdiction cannot vest until the court has received consent from all parties to an action").  [Docket No. 34.] Defendants Esposito, Martin Malasky, and Garrett Malasky subsequently appeared and consented to magistrate judge jurisdiction.  [Docket Nos. 42, 43, 55.]

On September 24, 2018, the court dismissed Plaintiff's amended complaint ("FAC") with prejudice as to Plastiras and Julian and without prejudice as to Esposito, Martin Malasky, and Garrett Malasky.  The court granted Plaintiff leave to file a second amended complaint against Esposito, Martin Malasky, and Garrett Malasky.  *Malasky v. Julian*, No. 16-cv-04102-DMR, 2018 WL 4635862, at *12 (N.D. Cal. Sept. 24, 2018).  Plaintiff filed the SAC on October 11, 2018. Despite the court's dismissal of Plastiras and Julian from the action, Plaintiff names Plastiras and

Julian as Defendants in the SAC, along with Esposito, Martin Malasky, and Garrett Malasky.

Defendants Plastiras, Julian, and Martin Malasky, and Garrett Malasky filed motions to dismiss the SAC on October 25, 2018. Pursuant to Civil Local Rule 7-3(a), which provides that any opposition to a motion "must be filed and served not more than 14 days after the motion was filed," any briefs in opposition to those three motions were due to be filed by November 8, 2018. Plaintiff filed oppositions to the motions on November 9, 2018, one day late. [Docket Nos. 68-70.] In his briefs, Plaintiff cites Federal Rule of Civil Procedure 6(d) to argue that his submissions are timely. That rule provides in relevant part that "[w]hen a party may or must act within a specified time after being served and service is made under Rule 5(b)(2)(C) (mail) . . . 3 days are added after the period would otherwise expire under Rule 6(a)." Fed. R. Civ. P. 6(d). However, Local Rule 7-3(a) expressly states that "Fed. R. Civ. P. 6(d), which extends deadlines that are tied to service (as opposed to filing), does not apply and thus does not extend this deadline." Civ. L.R. 7-3(a). As Plaintiff's oppositions to the motions were only one day late and none of the moving parties assert prejudice due to their untimeliness, the court will consider Plaintiff's opposition briefs.[1]

The court also notes that Plaintiff submitted requests for judicial notice in support of his oppositions to the motions to dismiss filed by Plastiras and Esposito. [Docket Nos. 75, 76.] Plaintiff filed the requests for judicial notice on November 15, 2018, one week after his oppositions were due, and in Plastiras's case, on the same date Plastiras's reply brief was due. Plaintiff provided no explanation for the untimeliness. The court declines to consider these filings on the grounds that they are untimely.[2]

---

[1] Esposito filed her motion to dismiss on October 29, 2018; Plaintiff filed a timely opposition to that motion. [Docket No. 71.]

[2] The court notes that even if it considered the late-filed requests for judicial notice, it would decline to take judicial notice of the documents Plaintiff asks the court to consider. Plaintiff asks the court to take judicial notice of two documents pursuant to Federal Rule of Evidence 201: an April 7, 2014 declaration by Plastiras and the "'final' divorce court judgment filed on March 5, 2014 in the state court divorce action which recites the terms of the Oct. 7, 2013 Marital Settlement Agreement." Neither document is authenticated and Plaintiff does not identify which specific facts contained therein are allegedly "not subject to reasonable dispute" under Rule 201(b).

## II.     JUDICIAL NOTICE

As it did in its previous orders dismissing the FAC, the court sua sponte takes judicial notice of another proceeding involving similar parties that Plaintiff filed in the United States District Court, Western District of Texas in 2016.  *See Malasky v. Julian, et al.*, No. 16-cv-00445 SS (W.D. Tex., filed Apr. 27, 2016) (the "Texas Action"); *see* Fed. R. Evid. 201(c)(1) ("[t]he court . . . may take judicial notice on its own").  Federal courts may "take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to the matters at issue."  *U.S. ex rel Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992).  In the Texas Action, Plaintiff sued Defendants Julian, Esposito, Martin, and Garrett (but not Plastiras) for FDCPA and "RICO Extortion" claims, alleging facts nearly identical to those alleged here.  *See Malasky*, No. 16-cv-00445 SS, Docket No. 3 (Am. Compl.).  On June 1, 2016, the court dismissed Plaintiff's complaint and amended complaint without prejudice, holding that those pleadings "allege only opinions and conclusions and lack any basis for any factual theory of liability, damages, or any other relief in this case."  *See id.*, Docket No. 12 (June 1, 2016 Order).  The court also warned Plaintiff about the possibility of Federal Rule of Civil Procedure 11 sanctions should he file "any other complaint in any other lawsuit in this Court," noting that sanctions are available "when there is no basis of fact nor law in judgment and the pleadings are wholly frivolous."  *Id.*

The court also sua sponte takes judicial notice of another action brought by Plaintiff in California state court involving allegations related to those in the FAC.  In April 2014, Plaintiff filed suit in Marin County Superior Court, alleging causes of action for unjust enrichment, fraud, and breach of contract/declaratory relief against Martin, Garrett, and Plastiras (the "California action").  [Docket No. 63-1 (Julian Decl., Oct. 25, 2018) ¶ 8, Ex. A (*Malasky v. Malasky, et al.*, No. CIV1401290 (Compl.) (filed Apr. 4, 2014)).]  In the California action, Plaintiff sought declaratory relief related to his dispute with his sons over the escrow funds received by them in connection with the promissory note and deed of trust.  *See id*.  Similar to the allegations in the FAC, Plaintiff alleged in the California action that he and Esposito sought to protect equity in the Tiburon house "by creating a promissory note and deed of trust in favor of [Martin and Garrett]

knowing that [Martin and Garrett] had not given them anything in consideration for such note and deed of trust." Julian Decl. Ex. A at ¶ 9. His unjust enrichment cause of action was based on his allegations that as to the escrow funds, "Plaintiff . . . conferred a benefit upon [Martin and Garrett] to which they are not entitled (e.g. because of the lack of consideration for the May 2010 promissory note and deed of trust)" and that Martin and Garrett "have no right to the disputed funds." *Id*. at ¶¶ 23, 24.

On September 5, 2014, the court in the California action sustained the sons' demurrer to the complaint without leave to amend as to all of Plaintiff's causes of action. Julian Decl. ¶ 10, Ex. B. In relevant part, the court sustained the demurrer to the unjust enrichment cause of action "on grounds it is based on allegations inconsistent with the express recital in the promissory note that states it was given 'For valuable consideration.'" *Id*. As to the fraud cause of action, the court held that Plaintiff failed to allege "reasonable reliance and damages," noting that "there appears to have been no true 'dispute' concerning the sons' entitlement to the $60,000 plus interest" in escrow funds. *Id*. On October 28, 2014, the court granted the sons' motion for an award of attorneys' fees as the prevailing party and awarded them $50,541.50. Julian Decl. ¶ 12, Ex. C. The California Court of Appeal affirmed the lower court's ruling on the demurrer and award of attorneys' fees on April 28, 2016. *Id*. at ¶ 14, Ex. F. The California Supreme Court denied review on July 13, 2016 and Plaintiff's petition for writ of certiorari with the United States Supreme Court was denied on January 9, 2017. *Id*. at ¶¶ 15, 16, Exs. I, J, K; 137 S. Ct. 635 (2017).

## III.     LEGAL STANDARDS

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing

8

1    *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.

2    2001)) (quotation marks omitted).  A claim has facial plausibility when a plaintiff "pleads factual

3    content that allows the court to draw the reasonable inference that the defendant is liable for the

4    misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citation omitted).  In other words, the facts alleged

5    must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of

6    a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing

7    *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir.

8    2001), overruled on other grounds by *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir.

9    2002).

10       As a general rule, a court may not consider "any material beyond the pleadings" when

11   ruling on a Rule 12(b)(6) motion.  *Lee*, 250 F.3d at 688 (citation and quotation marks omitted).

12   However, "a court may take judicial notice of 'matters of public record,'" *id.* at 689 (citing *Mack*

13   *v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)), and may also consider "documents

14   whose contents are alleged in a complaint and whose authenticity no party questions, but which

15   are not physically attached to the pleading," without converting a motion to dismiss under Rule

16   12(b)(6) into a motion for summary judgment.  *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.

17   1994), overruled on other grounds by *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir.

18   2002).  The court need not accept as true allegations that contradict facts which may be judicially

19   noticed.  *See Mullis v. U.S. Bankr. Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987).

20   **IV.    DISCUSSION**

21       **A. Martin Malasky and Garrett Malasky's Motion**

22       Martin Malasky and Garrett Malasky move to dismiss the SAC on the grounds that

23   Plaintiff's claims are inadequately pleaded.  They also argue that the SAC constitutes a collateral

24   attack on the California action that is barred under the *Rooker-Feldman* doctrine.

25       **1.    FDCPA Claim**

26       Plaintiff's first claim for relief is for violation of the FDCPA.  The FDCPA prohibits a

27   "debt collector" from using "any false, deceptive, or misleading representation or means in

28   connection with the collection of any debt" or "unfair or unconscionable means to collect or

attempt to collect any debt." 15 U.S.C §§ 1692e, 1692f. It also prohibits debt collectors from engaging in "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of any debt." 15 U.S.C. § 1692d.

Plaintiff alleges that he "owes <u>no</u> 'debt' to any defendant(s) related to the 'parents' share' of the student loans, to the 'students' share' of the student loans, and/or to the promissory note(s) and deed(s) of trust replaced by the MSA." SAC ¶ 71 (emphasis in original). He alleges that Defendants "invaded [P]laintiff's right of privacy, subjected [P]laintiff to harassment and intimidation, and invaded [P]laintiff's seclusion, solitude and private affairs by, but not limited to, the collection practices and demands for defense costs by defendants as noted herein." *Id.* at ¶ 72. He also alleges that Defendants "have attempted and are still attempting to collect and keep alleged 'debts' from [P]laintiff by improper collection methods, and/or to engage in fraud, extortion, theft and/or robbery to obtain and keep [P]laintiff's escrow funds for their own purposes (e.g. without paying the parents' share of the student loans)." *Id.* at ¶ 60. As with the FAC, the SAC does not identify a specific provision of the FDCPA that Plaintiff alleges the sons (or any other defendant) violated.

"The FDCPA is a consumer protection statute that prohibits certain abusive, deceptive, and unfair debt collection practices." *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 374 n.1 (2013). The stated purpose of the Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).

Plaintiff's FDCPA claim against Martin and Garrett must be dismissed as inadequately pleaded for several reasons. "As a threshold matter, a suit brought under the FDCPA must involve a 'debt' within the meaning of the statute." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009) (citing *Turner v. Cook*, 362 F.3d 1219, 1227 (9th Cir. 2004)). The FDCPA defines "debt" as

> any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

15 U.S.C. § 1692a(5). The statute "is limited in its reach 'to those obligations to pay arising from consensual transactions, where parties negotiate or contract for consumer-related goods or services.'" *Turner*, 362 F.3d at 1227 (quoting *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1326 (7th Cir. 1997), as the articulation of the "consensus judicial interpretation"). Here, the SAC does not allege the existence of a debt "arising out of an obligation" that the sons (or any other defendant) allegedly attempted to collect. In fact, Plaintiff denies the existence of any debt or obligation to any defendant. SAC ¶ 71. *See, e.g., Parham v. Seattle Serv. Bureau, Inc.*, 224 F. Supp. 3d 1268, 1269, 1272 (M.D. Fl. 2016) (holding that plaintiff failed to state a claim under the FDCPA where he did not allege that the debt arose out of a consensual transaction, but instead alleged that the defendant "fabricated the existence of a debt that it claimed arose out of an automobile accident").

In a previous submission, Plaintiff argued that the escrow funds that the sons received as a result of the promissory note(s) and deed(s) of trust are the "debt" that Defendants allegedly attempted to collect. [*See* Docket No. 29 (Pl.'s Suppl. Brief).] The escrow funds that are allegedly in his sons' possession and which Plaintiff seeks to recover by this lawsuit are not a consumer debt that Plaintiff himself owes. Rather, Plaintiff alleges that the escrow funds are rightfully his and should be returned to him. These funds do not satisfy the standard set forth in either the statute or *Turner*.

It is possible that Plaintiff also contends that unspecified "defense costs by defendants" constitute the debt. *See* SAC ¶ 72. These allegations are unclear, but potentially refer to the October 28, 2014 award of attorneys' fees to Martin and Garrett in the California action. However, the SAC is silent as to any attempt by any defendant to collect this award from Plaintiff. Moreover, at least one court has held that such an obligation is not a debt within the meaning of the FDCPA. *See Beal v. Himmel & Bernstein, LLP*, 615 F. Supp. 2d 214, 217 (S.D.N.Y. 2009) (holding that court-ordered obligation to pay attorneys' fees "is not a consumer debt within the meaning of the FDCPA because it did not arise out of any consumer transaction in which he engaged.").

The SAC also fails to allege that Martin or Garrett is a "debt collector" within the meaning

11

of the FDCPA. To the extent that Plaintiff asserts claims under 15 U.S.C. §§ 1692d, 1692e and/or 1692f, which prohibit harassment or abuse, false or misleading representations, and unfair practices in connection with the collection of a debt, these provisions apply only to "debt collector[s]" as defined by the FDCPA. *Schlegel v. Wells Fargo Bank, NA*, 720 F.3d 1204, 1208 (9th Cir. 2013) (holding that sections 1692e and 1692f "apply only to 'debt collector[s]'"); 15 U.S.C. § 1692d ("A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."). The term "debt collector" means: (1) "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts," and (2) any person "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Here, the SAC alleges that the sons are each "creditors" under the FDCPA, not debt collectors. *See* SAC ¶¶ 4, 5; 15 U.S.C. § 1692a(4).

For these reasons, Plaintiff's FDCPA claim against Martin Malasky and Garrett Malasky is dismissed.

### 2. RICO Claim

Plaintiff's second claim for relief is titled, "federal RICO." He alleges that "Defendants . . . have acted in concert and/or alone as part of the 'enterprise' noted herein; and have engaged in at least two (2) predicate acts prohibited by 18 U.S.C. Secs. 1961-1968 ('RICO') during the last 10 years." SAC ¶ 77. He alleges that the goals of the "enterprise" included Martin and Garrett's receipt of the escrow funds; the prevention of "any state court trial from occurring so that [P]laintiff could not recover the funds received or seized" by the sons; to punish Plaintiff by making him liable for attorney's fees payable to Julian, "even though [Julian] worked 'pro bono' on the state court case"; to retaliate against Plaintiff for his acts towards his children and/or Esposito during their marriage; and/or to "extort, steal, rob or defraud funds" from Plaintiff. *Id.* at ¶ 78.

The FAC does not identify the RICO subsection that Plaintiff alleges that Defendants violated, but it appears that Plaintiff seeks to proceed under 18 U.S.C. § 1962(c), the "RICO

statute." Section 1962(c) provides that it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c).[3] The elements of a civil RICO claim are "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's 'business or property.'" *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005) (quotation omitted). "RICO was intended to combat organized crime, not to provide a federal cause of action and treble damages to every tort plaintiff." *Oscar v. University Students Co-operative Ass'n,* 965 F.2d 783, 786 (9th Cir.1992).

The court previously dismissed Plaintiff's RICO claim on the grounds that Plaintiff did not plead a pattern of racketeering activity, including the requisite predicate acts. *Malasky*, 2018 WL 4635862, at *8-9. Plaintiff again fails to sufficiently allege that the sons (or any defendant) engaged in a pattern of racketeering activity. "A pattern of racketeering activity . . . requires at least two predicate acts, which include 'any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in [narcotics],' that is an offense under state law 'and punishable by imprisonment for more than one year,'" *United States*

---

[3] 18 U.S.C. § 1962(a) provides that it is unlawful

> for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

Section 1962(b) provides that it is unlawful

> for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

Neither section appears applicable here.

13

*v. Fernandez*, 388 F.3d 1199, 1221 (9th Cir. 2004), *modified*, 425 F.3d 1248 (9th Cir. 2005), as well as any act indictable under certain enumerated federal criminal statutes.  18 U.S.C. § 1961(1).  The SAC expressly alleges the following predicate acts that Defendants allegedly committed to achieve the enterprise's goal of "obtaining over $70,000 in escrow funds belonging to [P]laintiff" (SAC ¶ 10):

- "From about Feb. 1, 2014 to March 15, 2014, . . . there were at least 3 predicate acts: the Feb. 21, 2014 letter from [Plastiras] to [P]laintiff; the phone call by [Plastiras] to [P]laintiff; and the Feb. 28, 2014 email by [Plastiras] to [P]laintiff."  SAC ¶ 10.

- "From about Feb. 28, 2014 to about April 1, 2014, . . . there were at least 4 predicate acts: the escrow instructions submitted by [Martin Malasky] and the escrow instruction submitted by [Garrett Malasky] (both just before the escrow was to close); and the refusals of [the sons] to honor the prior representations to [P]laintiff by their apparent and/or ostensible agent [Plastiras]."  SAC ¶ 11.

- "From about April 1, 2014 onward, . . . there were at least 2 predicate acts: the declaration under oath by [Plastiras] which said he never represented the adult sons as any attorney . . .; and the refusals of [the sons] to pay off the parents' share of the student loans."  SAC ¶ 12.

The SAC also lists two California Penal Code provisions that Defendants allegedly violated, sections 484 (theft) and 487 (grand theft).  SAC ¶ 9.

As with the FAC, the SAC does not allege that any defendant committed one of the state law crimes defined as racketeering activity in section 1961(1)(A).  Neither common law fraud nor theft is a crime constituting a predicate act for purposes of establishing a pattern of racketeering activity.  *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 653 (2008) ("Congress chose to make mail fraud, not common-law fraud, the predicate act for a RICO violation."); *United States v. Napoli*, 54 F.3d 63, 68 (2d Cir. 1995), *abrogated on other grounds as stated in United States v. Genao*, 343 F.3d 578, 584 (2d Cir. 2003) ("the crime of theft, standing alone, . . . is neither a federal crime listed in [18 U.S.C. §§ ] 1956 and 1961, nor one of the state-law offenses that

constitute RICO predicate acts").  *See also Annulli v. Panikkar*, 200 F.3d 189, 200 (3d Cir. 1999), *abrogated on other grounds in Forbes v. Eagleson*, 228 F.3d 471 (3d Cir. 2000) ("if garden-variety state law crimes, torts, and contract breaches were to constitute predicate acts of racketeering (along with mail and wire fraud), civil RICO law, which is already a behemoth, would swallow state civil and criminal law whole.").  Therefore, the FAC fails to allege that the sons (or any other defendant) has engaged in a "pattern" of racketeering activity.  *See Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 481 (1985) (holding that the statutory language that a pattern "requires" rather than "means" two acts implies that "while two acts are necessary, they may not be sufficient" and noting that the legislative history "supports the view that two isolated acts of racketeering activity do not constitute a pattern.").

The SAC also does not adequately allege an enterprise.  The RICO statute defines "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).  "[A]n associated-in-fact enterprise is 'a group of persons associated together for a common purpose of engaging in a course of conduct.'"  *Odom v. Microsoft Corp.*, 486 F.3d 541, 552 (9th Cir. 2007) (quoting *United States v. Turkette,* 452 U.S. 576, 583 (1981)).  In addition to showing a common purpose, Plaintiff must show that there is "an ongoing organization, formal or informal," and "that the various associates function as a continuing unit."  *Id.*; *see Boyle v. United States,* 556 U.S. 938, 946 (2009) ("From the terms of RICO, it is apparent that an association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose.").  Although the SAC contains numerous assertions that Defendants "engaged in an 'enterprise' . . . for the common purpose" of obtaining the escrow funds that Plaintiff alleges belong to him, (*see* SAC ¶¶ 10-15), these allegations are entirely conclusory.  The SAC does not sufficiently allege facts supporting the assertion that Defendants formed an enterprise or function as a continuing unit.  Further, the SAC does not allege that Martin Malasky or Garrett Malasky "conducted or participated in the conduct of the '*enterprise's* affairs,'" as opposed to their own affairs.  *See Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) (emphasis in

original).

For these reasons, Plaintiff's RICO claim against Martin Malasky and Garrett Malasky is dismissed.

### 3. Fraud Claim

Plaintiff's third claim is "state fraud." He alleges that Defendants "have deceived and defrauded [P]laintiff while acting as individuals and/or acting in concert, to deprive [P]laintiff of over $70,000 of his escrow funds; have refused to pay off the parent's share of the student loans; and have prevented [P]laintiff from exercising his rights as granted by a judgment of the state divorce court in 2014 which allowed [P]laintiff to contest or challenge the 2010 promissory notes." SAC ¶ 80.

The elements of a claim for fraud are: (1) a false statement or omission of a fact that should have been disclosed; (2) knowledge on the part of the defendant that the statement is untrue; (3) intent to deceive; (4) justifiable reliance by the alleged victim on the statement; and (4) resulting damage. *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996). Plaintiff's fraud claim is subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). To comply with Rule 9(b), fraud allegations must be specific enough to give defendants notice of the particular misconduct that is alleged to constitute the fraud so that they can defend against the claim. *Bly-McGee v. State of California*, 236 F.3d 1014, 1019 (9th Cir. 2001). Allegations of fraud must be stated with "specificity including an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Swartz v. KPMG LLP*, 476 F.3d 756. 764 (9th Cir. 2007). Further, the complaint must "set forth an explanation as to why [a] statement or omission complained of was false and misleading." *In re GlenFed, Inc. Sec. Litig.,* 42 F.3d 1541, 1548 (9th Cir.1994) (en banc); *see Fecht v. Price Co.,* 70 F.3d 1078, 1082 (9th Cir. 1995). Additionally, where multiple defendants are involved, the plaintiff also must identify the role of each defendant in the alleged fraudulent scheme. *See Swartz v. KPMG LLP,* 476 F.3d 756, 764–65 (9th Cir. 2007). Vague or conclusory allegations are insufficient to satisfy the particularity requirement. *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).

The allegations supporting Plaintiff's fraud claim are insufficient. It is not clear from the SAC exactly what statements or omissions by the sons (or any defendant) form the basis of Plaintiff's fraud claim. He does not set forth the "time, place, and specific content" of any false representations, not the identities of the parties to those misrepresentations. Moreover, Plaintiff does not allege that he justifiably relied on the misrepresentations or that he suffered damages resulting from the misrepresentations.

In addition, California Code of Civil Procedure section 338 provides that actions for fraud must be brought within three years. A fraud claim accrues when the aggrieved party discovers the facts constituting the fraud. Cal. Civ. Proc. Code § 338(d). It appears that the conduct which Plaintiff challenges took place in 2014. *See* SAC ¶¶ 7, 9, 10, 11, 51-58. Plaintiff does not allege facts suggesting he did not learn of the misrepresentations until after 2014. Accordingly, his fraud claim appears to be barred by the statute of limitations.

For these reasons, Plaintiff has failed to state a claim for fraud.

### 4. Retaliation Claim

The FAC includes a claim for "retaliation." Plaintiff alleges that "[t]he acts and omissions of defendants . . . were done . . . to retaliate against [P]laintiff with respect to his obligations under law as to the 2010 promissory notes, the 2013 MSA, the 2014 state divorce court judgment, the required payoff of the parents' share of the student loans by way of a constructive trust, and/or the alleged debts owed and/or gifts to [the sons][.]" SAC ¶ 85.

Plaintiff cites no applicable authority for this claim. He alleges that the retaliation "is prohibited under federal law since [P]laintiff is exercising his state and federal rights as to these matters," citing *Sloman v. Tadlock*, 21 F.3d 1462, 1470 (9th Cir. 1994), *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1313-20 (9th Cir. 1989), and *Lacey v. Maricopa County*, 693 F.3d 896, 916 (9th Cir. 2012). *Id*. However, these cases are inapposite, as they are 42 U.S.C. § 1983 cases alleging retaliation by state actors against individuals exercising their First Amendment rights. The SAC does not allege that any of the defendants were acting under the color of state law or deprived Plaintiff of rights secured by the Constitution or federal statutes. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Ketchum v. Alameda Cty.*, 811 F.2d 1243, 1245 (9th Cir. 1987). Accordingly,

United States District Court
Northern District of California

Plaintiff has failed to state a claim for retaliation.

### 5.    Declaratory Judgment

Finally, Plaintiff alleges a claim for declaratory relief pursuant to the Declaratory

Judgment Act, 28 U.S.C. § 2201, and California Code of Civil Procedure section 1060.

The Declaratory Judgment Act provides in pertinent part:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).  Similarly, California Code of Civil Procedure section 1060 provides for an

action for declaratory relief where an "actual controversy" exists as to "the legal rights and duties

of the respective parties" to a written instrument.  Cal. Code Civ. Proc. § 1060.  "A declaratory

judgment is not a theory of recovery . . . [§ 2201] "merely offers an *additional remedy* to

litigants."  *Flores v. EMC Mortg. Co.*, 997 F. Supp. 2d 1088, 1111 (E.D. Cal. 2014) (citations and

quotation marks omitted).  Declaratory relief is appropriate "(1) when the judgment will serve a

useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate

and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."

*Bilbrey by Bilbrey v. Brown,* 738 F.2d 1462, 1470 (9th Cir. 1984).

As discussed above, the court has already determined that the SAC does not adequately

allege any claims for relief.  Plaintiff's claim for declaratory relief does not constitute an

independent basis for recovery and may not stand alone.  Because the court has dismissed

Plaintiff's underlying claims, it must also dismiss his declaratory relief claim.  *See Team Enters.,*

*LLC v. Western Inv. Real Estate Trust*, 721 F. Supp. 2d 898, 911 (E.D. Cal. 2010) ("The

declaratory relief claim falls with the demise of [the plaintiff's] claims and the absence of a

cognizable justiciable controversy."); *City of Cotati v. Cashman*, 29 Cal. 4th 69, 79 (2002) ("The

fundamental basis of declaratory relief is the existence of an actual, present controversy over a

proper subject." (quotation omitted)).[4]

_____

[4] As the court concludes that the SAC fails to state a claim, it need not reach the sons' argument

1
2
3 **B.** **Esposito's Motion**

4 Esposito moves to dismiss the SAC on the grounds that Plaintiff's claims are inadequately

5 pleaded.

6 The analysis set forth above regarding Plaintiff's FDCPA, RICO, fraud, retaliation, and

7 declaratory relief claims applies with equal force to those claims as pleaded against Esposito. As

8 to the FDCPA claim, the SAC does not identify a specific provision of the FDCPA that Plaintiff

9 alleges Esposito violated and does not identify a "debt" within the meaning of the FDCPA that she

10 allegedly attempted to collect. Further, as with Martin and Garrett, the SAC does not allege that

11 Esposito is a debt collector within the meaning of the FDCPA; instead, it alleges that she is an

12 alleged "creditor." *See* SAC ¶ 3.

13 The RICO claim against Esposito is inadequately pleaded, as the SAC does not identify the

14 RICO subsection that Plaintiff alleges Esposito violated; fails to identify sufficient predicate acts;

15 fails to allege a pattern of racketeering activity; and fails to allege an enterprise. The SAC fails to

16 state a fraud claim against Esposito, as it does not identify with particularity any statements or

17 omissions by Esposito that Plaintiff contends were fraudulent, allege that Plaintiff justifiably relied

18 on any misrepresentations by Esposito, or allege damages as a result of any misrepresentation by

19 Esposito. It also appears that the fraud claim is time-barred. As to the "retaliation" claim, as

20 discussed above, Plaintiff cites no authority for such a claim. Finally, the claim for declaratory

21 relief as to Esposito fails along with the other claims.

22 **C.** **Plastiras and Julian's Motions**

23 As noted, although the court dismissed the claims in the FAC as to Plastiras and Julian

24 with prejudice, Plaintiff went beyond the scope of the permissible amendment and named Plastiras

25 and Julian as Defendants in the SAC. The substantive claims that were originally dismissed with

26 prejudice as to Plastiras and Julian—the FDCPA and RICO claims—remain dismissed with

27

28 _____
that the SAC should be dismissed pursuant to the *Rooker–Feldman* doctrine.

prejudice as to those Defendants. As to the SAC's new claims for fraud and retaliation, the court need not decide whether res judicata bars those claims as to Plastiras and Julian. For the same reasons as those discussed above, the SAC fails to state a claim for fraud or retaliation against Plastiras or Julian, as the SAC does not identify with particularity any statements or omissions by Plastiras or Julian that Plaintiff contends were fraudulent, allege that Plaintiff justifiably relied on any misrepresentations by Plastiras or Julian, or allege damages as a result of any misrepresentation by Plastiras or Julian. As to the retaliation claim, there appears to be no authority for such a claim. Finally, the claim for declaratory relief as to Plastiras and Julian fails along with the other claims in the SAC against Plastiras and Julian.

###    D.    Dismissal With Prejudice

Dismissal without leave to amend is only appropriate where it is clear that the complaint "could not be saved by amendment," such as after a "repeated failure to cure deficiencies by amendments previously allowed." *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1062)). Plaintiff has already been given the opportunity to amend his complaint but has failed to state a valid claim against any of the defendants. The court finds that further amendment would be futile and dismisses the SAC with prejudice.

## V.    CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are granted in part and the SAC is dismissed with prejudice. The Clerk shall close the file.


**IT IS SO ORDERED.**

Dated: January 2, 2019



_____
Donna M. Ryu
United States Magistrate Judge